IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| THORNCO HOSPITALITY, LLC, | § § § | Case No. 24-33596-swe |
| DEBTOR. | § § § | Chapter 11 |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF HILTON FRANCHISE HOLDINGS LLC TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Hilton Franchise Holding LLC ("Hilton") by and through its undersigned counsel, files this limited objection and reservation of rights (the "Limited Objection") to the First Amended Plan of Reorganization (the "First Amended Plan") [ECF No. 80] filed by Thornco Hospitality LLC ("Thornco" or the "Debtor") specifically with respect to the provisions of the Plan regarding the Debtor's assumption of the Franchise Agreement between the Debtor and Hilton and respectfully submits:

### I. PRELIMINARY STATEMENT

1. While Hilton does not necessarily object to the Debtor's assumption of the Franchise Agreement (as defined below) by and between Hilton and the Debtor, *per se,* Hilton files this Limited Objection to the extent that the Debtor is proposing to assume the Franchise Agreement without complying with (i) the provisions of the Franchise Agreement governing the transfer of equity ownership in the franchisee entity – here the Debtor; and (ii) the necessary requirements under 11 U.S.C. §365(b)(1). In particular, Hilton is concerned that the Plan provides for re-constituting the ownership of the Debtor entity in a Trust created under the First Amended Plan where the proposed Trustees are, as yet, not determined. Additionally, the First Amended Plan calls for the assumption of the Franchise Agreement and cure of all defaults, but does not

00342936 - 1
323650594.1

address compensating Hilton for actual pecuniary loss incurred by it, or adequate assurances of future performance as required by §365(b)(1).

## II. RELEVANT FACTS

### A. <u>Hilton Franchise Holdings, LLC.</u>

2. Hilton operates a guest lodging franchise system. The system, broadly stated, is comprised of various trade names and service marks (which are on the Principal Register of the United States Patent and Trademark Office), logos and derivations thereof.

3. Hilton or its affiliates own and possess the exclusive right to license the use of the service mark "Homewood Suites by Hilton"® and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof. These marks, together with certain other trademarks and service marks which are not registered or which are pending registration, are hereinafter collectively referred to as the "Hilton Marks".

4. Hilton has developed a system for the promotion and assistance of independently owned and/or operated guest lodging facilities designed to enable such facilities to compete effectively in the hospitality market (which system is hereinafter referred to as the "Hilton System"). The Hilton System includes, but is not limited to, common use and promotion of certain Hilton Marks, copyrights, trade secrets, centralized advertising programs, referral programs and centralized support functions such as a nationwide computer reservation system. Hilton, from time to time, revises and updates the Hilton System.

5. Hilton or its predecessors have continuously used each of the Hilton Marks since the date of their registration and those service marks are in full force and effect pursuant to 15 U.S.C. §

1065. Hilton has given notice to the public of the registration of the Hilton Marks as provided in 15 U.S.C. § 1111, and Hilton uses or has used the Hilton Marks as abbreviations of its brand name.

6. The hotels operating as part of the license system are all independently owned and operated. Hilton allows its licensees, pursuant to individual license or franchise agreements, to operate their hotels as guest-lodging facilities utilizing the Hilton Marks and System. Through its franchise system, Hilton markets, promotes and provides services to its licensees throughout the United States. To identify the origin of their services, Hilton allows its licensees to utilize the Hilton Marks and to otherwise associate their facilities services with the applicable Hiltoni brand.

7. Hilton has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in the Hilton Marks as distinctly designating the high-quality guest lodging services provided by Hilton licensees. The Hilton Marks are indisputably famous trademarks in the United States.

B. **The Franchise Agreement.**

8. As noted, *supra,* Hilton and the Debtor entered into a Franchise Agreement and related agreements (collectively, the "Franchise Agreement") dated June 6, 2019, pursuant to which the Debtor is authorized to operate a 109 guest room hotel at 12150 Grant Street, Thornton, Colorado (the "Facility") as a "Homewood Suites by Hilton"® hotel.

9. Pursuant to the Franchise Agreement, the Debtor is required to pay Hilton certain monthly fees, as defined and set forth in the Franchise Agreement (the "Monthly Fees").

10. Section 12 of the Franchise Agreement provides as follow with respect to the transfer of ownership interests in the franchisee entity:

> **12.2 Your Transfer.** You understand and acknowledge that the rights and duties in this Agreement are personal to you and that we are entering Into this Agreement In reliance on your business skill, financial capacity, and the personal character of you and your officers, directors, partners, members, shareholders or trustees. A Transfer by you (or by an Equity Owner as of the Effective Date, or by a transferee Equity Owner we later approve) of any Equity Interest, or this Agreement, or any rights or

obligations under this Agreement, is prohibited other than as expressly permitted in this Agreement. In any Transfer by you or any Equity Owner under this Subsection 12.2, the proposed Transferee may not be a Sanctioned Person or a Competitor.

*****

**12.2.1.2 Permitted Transfers That Require Notice and Our Consent.** We will permit you or any Equity Owner to engage in the following Permitted Transfers If the Permitted Transfer meets the listed requirements. For Permitted Transfers under this Subsection, you must: (a) give us at least sixty (60) days' advance written notice of the proposed Permitted Transfer (including the identity and contact Information for any proposed transferee); (b) pay to us on request a nonrefundable processing fee of Five Thousand Dollars ($5,000); provided, however, we agree to waive the processing fee for one (1) Permitted Transfer if It occurs before the Opening Date; (c) follow our then-current procedure for processing Permitted Transfers, including providing any information we may require In order to review the proposed Transfer and completing our then-current compliance process; and (d) execute our then-current standard documents required for processing Permitted Transfers.

****

**12.2.2 Change of Ownership Transfer.** A Change of Ownership Transfer is any Transfer that will result in a change of Control of you, the Hotel or the Hotel Site, or is not otherwise described In Subsection 12.2.1. We will have sixty (60) days from our receipt of the completed and signed franchise application to consent or withhold our consent to any proposed Change of Ownership Transfer. Our consent will not be unreasonably withheld. You consent to our communication with any third party we deem necessary about the Hotel in order for us to evaluate the proposed Change of Ownership Transfer. Our consent to the Change of Ownership Transfer is subject to the following conditions, all of which must be satisfied at or before the date of closing the Change of Ownership Transfer ("Closing").

C. **The Debtor's Default under the License Agreement and Bankruptcy Filing.**

11. On November 25, 2024, the Debtor filed a voluntary Chapter 11 bankruptcy proceeding with this Court. The Debtor has continued to operate post-petition as a debtor in possession.

12. At the time of the bankruptcy filing, the Debtor was indebted to Hilton in the amount of $2,187.12. On February 28, 2025, Hilton filed a proof of claim in the within matter in the amount of $2,187.12 (the "Hilton POC")

13. On March 24, 2025, the Debtor filed its First Amended Plan which At Article 5, provides for the cancellation of Class 5 equity interests and the issuance of New Member Interests to a Trust. Article 6.02 provides for the creation of a Trust, stating specifically that

Confirmation of the Plan shall effect the formation of the Trust. The Causes of Action shall be transferred to the Trust by Debtor. The Trust Assets shall consist of (i) the Causes of Action; and (ii) the New Member Interests in the Reorganized Debtor. The specific terms, conditions, and rules governing the Trust are contained in the Trust Agreement, a copy of which will be filed with the Court not less than ten (10) days prior to the Confirmation Hearing.

In terms of the composition and management of the Trust, the First Amended Plan provides as follows

> **7.03 Beneficiaries of the Trust.** The beneficiaries of the Trust shall be the holders of Allowed Claims in Class 4 who receive their Pro Rata portion of the Trust Interest in accordance with the terms of this Plan.
>
> **7.04 Appointment of the Trustee; Trust Committee.** The initial Trustee shall be selected by the Debtor and Lincoln. Any successor Trustee will be selected by the Trust Committee. The Trust Committee consists of up to three members holding the largest Allowed Unsecured Claims in Class 4. All major decisions by the Trustee, including, but not limited to, whether to sell the Hotel or prosecute or settle an Estate Cause of Action, will require the consent of a majority of the Trust Committee.

14. The First Amended Plan does not address the issues of actual pecuniary loss or adequate assurances of future performance as contemplated under 11 U.S.C. §365(b)(1)

### III. LIMITED OBJECTION

15. As noted in the Preliminary Statement at Section I, herein, Hilton does not necessarily oppose the Debtor's First Amended Plan in general or the assumption of the Franchise Agreement in specific. At this point however, it must assert this limited objection and reservation of rights as the First Amended Plan does not comport with the requirements for transfer of equity in the franchisee entity as set forth in the Franchise Agreement, nor does it provide for or address the compensation for actual pecuniary loss to Hilton or adequate assurances of future performance as required under 11 U.S.C. § 365(b).

16. Hilton is willing to engage in discussion with the Debtor to address these issues and then make an informed decision as the whether or not it will consent to assumption. Hilton is optimistic that these discussions can take place prior to the hearing date for confirmation which is presently set for June 3, 2025. Having said that, Hilton was constrained to file this Limited Objection lest it be deemed to have consented to the proposed assumption of the Franchise Agreement.

17. A bankruptcy court order is required for a debtor to assume an executory contract. 11 U.S.C. §365(a). The legislative history indicates that in permitting assumption, bankruptcy courts must protect the non-debtors' bargain, including nonmonetary considerations, under all contracts. H.R. Rep. No. 595, 95th Cong. 2nd Sess. 348 (1978), reprinted in 1978 U.S. Code Cong. Ad. News 5963, 6304-6305. See also In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2nd Cir. 1996) (Congress' intent in imposing cure and adequate assurance conditions on ability of bankruptcy debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance).

18. Where there has been a default in an executory contract, as with the License Agreement, a debtor must clear three (3) specific hurdles as a condition of assumption:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. §365(b)(1).

19. Compliance with <u>each</u> requirement is required before assumption can be approved. See <u>In re Rachels Industries, Inc.</u>, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990) (citations omitted). The party seeking to assume the executory contract bears the burden of proving that the contract is one subject to assumption and that all of the requirements for assumption have been met. <u>Id.</u>

20. There is a pre-petition default under the Franchise Agreement. That being the case, the Debtor does not satisfy the statutory requirements for assumption of the Franchise Agreement in that it has not proposed to compensate Hilton for any actual pecuniary loss suffered as a result of the Debtor's defaults, nor has the Debtor proffered any adequate assurance of future performance under the Franchise Agreement.

## IV. RESERVATION OF RIGHTS

21. Hilton specifically reserves all other rights and remedies it may have under the Franchise Agreement, at law or at equity, including, *inter alia*, the right to amend its claim herein to seek liquidated damages in the event that the Franchise Agreement is prematurely terminated.

22. Hilton expressly reserves the right to object to: (i) any amendment to or revision of the First Amended Plan, at the initial hearing(s) or otherwise; and (ii) amend, modify and/or supplement this Limited Objections as may be appropriate.

23. Nothing herein conveys Hilton's actual or tacit (i) release, discharge, waiver, modification, or compromise of any claim; (ii) release, discharge, waive, modify, or compromise any rights or claims under the Franchise Agreement, at law or at equity; (iii) waiver of any defaults or breaches of the Debtor under the Agreements; or (iv) consent to assumption, assumption and assignment, or rejection of the Franchise Agreement by the Debtor. Hilton specifically reserves all other rights and remedies it may have under the Franchise Agreement, at law or at equity.

## V. CONCLUSION

24. For the foregoing reasons, Hilton respectfully asserts this Limited Objection and submits that the plan, as presently constituted cannot be confirmed unless and until the Limited Objection is resolved.

Respectfully submitted,

By: /s/ *David S. Catuogno*

**K&L GATES**
*Attorneys for Hilton Franchising Holdings LLC*
K&L GATES LLP
One Newark Center - Tenth Floor
Newark, NJ 07102
Telephone: 973.848.4023
Facsimile: 973.848.4001
david.catuogno@klgates.com

Dated: May 27, 2025

323650594.1